**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| JACKIE MCCLEARY, ET AL. | CIVIL ACTION NO. 19-00052 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ELEKTA, INC., ET AL. | MAGISTRATE JUDGE HAYES |

## MEMORANDUM RULING

Before the Court is a Partial Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) filed by Defendants, Elekta, Inc. and Elekta Oncology Systems, Inc. (collectively "Elekta). See Record Document 7. Plaintiffs Jackie McCleary, Sanford Bellows, Sharron Bellows, Mark Hays, Glenna Hays, Justin Kraker, and Christy Kraker (collectively "Plaintiffs") oppose the motion. See Record Document 11. Elekta seeks dismissal of Plaintiffs' negligence claims and attorney's fees. For the reasons set forth below, Elekta's motion is hereby **GRANTED.**

## BACKGROUND

The factual allegations contained in the complaint are accepted as true and are as follows.[1] This matter arises out of the removal of a cancer treatment machine from the Overton Brooks VA Medical Center ("Overton Brooks") in Shreveport, Louisiana in 2014. See Record Document 1 at 4. The machine, manufactured by Elekta, serves to treat cancer patients by "aiming a beam of radiation at a tumor to kill the cancer cells." Id.

In 2014, Overton Brooks and the Veterans Health Administration ("VHA") entered into a contract with Elekta to buy a new machine, and under the contract Elekta agreed

[1] "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (citations omitted).

to remove the old machine and install the new one. See id. Elekta then entered into a contract with Advanced Shielding Technologies, Inc. ("Advanced Shielding") to remove the old machine. See id. On the day of removal, Advanced Shielding only sent one worker. See id. at 6. Because removal required more manpower, Elekta and Advanced Shielding asked Overton Brooks to provide employees to help with removal. See id. Therefore, four employees of the VHA—Sanford Bellows, Mark Hays, Justin Kraker, and Steven McCleary—were assigned to remove the machine. See id. Both Elekta and Advanced Shielding "told Overton Brooks that the old machine contained no radioactivity and that there was no danger to the employees of the Veteran Health Administration." Id.

The removal process took approximately two days. See id. at 7. After removal, Advanced Shielding attempted to dispose of the old machine at a local scrap yard, but the scrap yard refused the machine because it "set off radiation sensors." Id. Upon learning this, the employees asked Elekta and Advanced Shielding if they "had been exposed to dangerous levels of radioactivity." Id. Again, Elekta and Advanced Shielding "assured plaintiffs that there was no danger to the machine." Id.

Nearly four years later in May of 2018, Steven McCleary, one of the employees who removed the machine, died from acute myeloblastic leukemia. See id. Plaintiffs allege this type of cancer is "known to be caused by exposure to radiation." Id. at 8. The complaint also asserts Mark Hays, another employee who removed the machine, "was told that his doctors had found ground glass nodules in his lungs." Id. Further, the complaint alleges the employees have also suffered bodily injuries and sickness from their exposure to radiation. See id.

Plaintiffs Jackie McCleary, Sanford Bellows, Mark Hays, Justin Kraker, and their spouses brought the instant suit against Elekta and Advanced Shielding alleging claims of negligence and negligent misrepresentation. See id. at 8–12. In addition, Plaintiffs sued Elekta under the Louisiana Products Liability Act ("LPLA") for failure to warn of the risks of exposure to radiation. See id. at 12. Further, Plaintiffs seek recovery of attorney's fees, among other damages. See id. at 17.

Elekta has now moved to dismiss all claims of negligence, attorney's fees and other common law claims asserting that the LPLA's exclusivity provision bars recovery outside of the LPLA against a manufacturer for a defective product. See Record Document 7-1 at 1. Plaintiffs have filed an opposition. See Record Document 11. Elekta filed a reply. See Record Document 14.

## LAW AND ANALYSIS

### I. Legal Standards

#### A. Pleading and 12(b)(6) Motion to Dismiss Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading requirements to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544, 127 S. Ct. 1955 (2007). Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555–56, 127 S. Ct. at 1965. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action,"

the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. Courts must accept all factual allegations in the complaint as true. See id. However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, Tex., 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 678–79, 129 S. Ct. at 1949.

**B. Federal Court Sitting in Diversity**

As the present case is before the Court under diversity jurisdiction, the Court must apply the substantive law of the forum state pursuant to the Erie doctrine. See Bradley v. Allstate Ins. Co., 620 F.3d 509, 516 n.2 (5th Cir. 2010) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817 (1938)). Therefore, as Louisiana serves as the forum state of this litigation, the Court must apply Louisiana substantive law. The Fifth Circuit has described the appropriate methodology to be applied by a federal court sitting in diversity in Louisiana:

> To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court. In the absence of a final decision by the Louisiana Supreme Court, we must make an Erie guess and determine, in our best judgment, how that court would resolve the issue if presented with the same case. In making an Erie guess, we must employ Louisiana's civilian methodology, whereby we first examine primary sources of law: the constitution, codes, and statutes. Jurisprudence, even when it rises to the level of *jurisprudence constante*, is a secondary law source in Louisiana. Thus, although we will

> not disregard the decisions of Louisiana's intermediate courts unless we are convinced that the Louisiana Supreme Court would decide otherwise, we are not strictly bound by them.

In re Katrina Canal Breaches Litigation, 495 F.3d 191, 206 (5th Cir. 2007) (internal citations omitted).

### C. The LPLA's Exclusivity Provision

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. Under the LPLA, "a plaintiff may not recover from a manufacturer for damage caused by a product on the basis of any theory of liability not set forth in the LPLA." Jefferson v. Lead Indus. Ass'n, Inc., 930 F. Supp. 241, 244–45 (E.D. La. 1996). Further, liability attaches to a manufacturer of a product only if the plaintiff's damages are "proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." La. R.S. 9:2800.54(A). The LPLA sets forth four exclusive theories of recovery against a manufacturer: (1) defect in construction or composition; (2) defect in design; (3) inadequate warning; or (4) failure to comply with an express warranty. See La. R.S. 9:2800.54(B)(1)–(4).

Courts have "consistently held that the LPLA subsumes all possible causes of action, with the exception of a claim in redhibition." Touro Infirmary v. Sizeler Architects, 2004-2210 (La. App. 4 Cir. 11/21/06), 947 So.2d 740, 744; see Stahl v. Novartis Pharm. Corp., 283 F.3d 254 (5th Cir. 2002); see also Carter v. Louisville Ladder Group, LLC, No. 04-cv-1324, 2005 WL 3088613, at *7 (W.D. La. Nov. 17, 2005) ("The LPLA bars all causes of action for general negligence brought against product manufacturers.").

## II. Analysis

Defendants assert the LPLA's exclusivity provision bars Plaintiffs recovery for their claims of negligence and attorney's fees. See Record Document 7. However, Plaintiffs contend that manufacturers can be held liable for both LPLA and general negligence claims where defendants capacity as a manufacturer is not essential. See Record Document 11 at 6. Further, Plaintiffs cite to Louisiana cases finding a defendant manufacturer can wear "two hats," where one hat gives rise to liability under the LPLA and the other gives rise to liability under general negligence principles. Id. (citing Lavergne v. America's Pizza Co., 2002-889 (La. App. 3 Cir. 2/5/03), 838 So.2d 845). Furthermore, Plaintiffs allege "when the source of the plaintiff's damage is not a defect or condition of the manufacturer's product, but some other act or omission committed by the manufacturer, the plaintiff may bring a general negligence claim alongside an LPLA claim." Record Document 11 at 6–7. The Court disagrees and finds the plain language of the LPLA provides the exclusive remedy for liability against manufacturers for damage caused by their product.

The Louisiana Supreme Court has not ruled on this precise issue, so this Court must make an Erie "guess" as to what the Louisiana Supreme Court would decide. In re Katrina Canal Breaches Litigation, 495 F.3d at 206. In accordance with Louisiana's civilian methodology, an Erie "guess" begins with an analysis of primary sources of law. Id. The Louisiana Supreme Court dictates that when a statute is "clear and unambiguous and its application does not lead to absurd consequences, its language must be given effect, and its provisions must be construed so as to give effect to the purposes indicated by a fair interpretation of the language used." Boudreaux v. La. Dep't of Public Safety &

Corr., 2012-0239 (La. 10/16/12), 101 So.3d 22, 26 (citing La. Civ. Code art. 9; La. R.S. 1:4). Here, the LPLA is clear and unambiguous: "This chapter establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52. The legislature clearly intended the LPLA to serve as the only means of recovery against a manufacturer for damage caused by their product. Furthermore, while the Louisiana Supreme Court has not ruled on this direct issue, it has emphasized the exclusive nature of the LPLA. See Reynolds v. Bordelon, 2014-2371 (La. 6/30/15), 172 So.3d 607, 612 ("The plaintiff's case arises under the LPLA, which provides the exclusive theories under which a plaintiff can pursue a claim against a manufacturer for an alleged product defect."); see also Payne v. Gardner, 2010-2627 (La. 2/18/11), 56 So.3d 229, 231 ("Under the law governing this action, plaintiff's exclusive remedy against [the manufacturer] sounds in products liability as governed by the [LPLA].").

Plaintiffs rely heavily on Crawford v. Dehl for the proposition that a manufacturer may be held liable for general negligence claims where the role of the defendant as manufacturer is not essential. See No. 08-0463, 2008 WL 4186863, at *3 (W.D. La. July 21, 2008); see also Record Document 11 at 18. However, Crawford is distinguishable from the instant matter. The plaintiff in Crawford never alleged LPLA claims against the manufacturer, rather the plaintiff only pleaded claims of negligence. See id. at *1. Thus, the question before the Crawford court was not whether a negligence claim and an LPLA claim could proceed together, but whether a defendant manufacturer could be liable simply under a theory of negligence. Whereas here, Plaintiffs attempt to hold Elekta liable for both general negligence claims and LPLA failure to warn claims. See Record Document 1 at 8–12. The Court finds this distinction significant. Furthermore, even if

Crawford was on point, this Court is not bound by Crawford, as it was not rendered by a Louisiana state court and is outside the purview of consideration for making an Erie "guess." Gulf & Miss. River Transp. Co., Ltd. v. BP Oil Pipeline Co., 730 F.3d 484, 488–89 (5th Cir. 2013).

Plaintiffs reliance on the "two hat" theory of liability for manufacturers is also misplaced. In nearly every case where the "two hat" theory is invoked, the defendant manufacturer is being held vicariously liable for their employees' negligence. See Lavergne, 838 So.2d 845; Triche v. McDonald's Corp., 2014-318 (La. App. 5 Cir. 10/29/14), 164 So.3d 253, 258; Colbert v. Sonic Rests., Inc., 741 F. Supp. 2d 764, 772 (W.D. La. 2010). There the courts found the LPLA's exclusivity provision was not applicable because manufacturers cannot use the LPLA as a shield to immunize them from all tort liability. See Lavergne, 838 So.2d at 848 ("While the LPLA's exclusivity provision eliminates a general negligence cause of action for damages *caused by a product,* it does not eliminate the liability of a manufacturer for damages *caused by the negligent use of its product* by one of its employees."). These cases are clearly distinguishable from the instant matter because here the damage asserted by Plaintiffs was *caused* by the product itself not by an act of Elekta's employee. Therefore, the "two hat" theory is inapplicable to this current matter.

Finally, Plaintiffs attempt to analogize this case to a line of cases recognizing a contractual claim exception to the LPLA's exclusivity provision. See Record Document 11 at 23–25. These cases are inapposite because Plaintiffs have alleged no contractual relationship with Elekta.

The Court finds the language of the LPLA is clear, the LPLA is the exclusive remedy against a manufacturer for damage caused by a defective product. See La. R.S. 9:2800.52. Because of the LPLA's exclusive nature, Plaintiffs may not bring general negligence claims against Elekta. Therefore, the general negligence claims against Elekta must be dismissed. Similarly, because Plaintiffs' only recovery against Elekta is found in the LPLA, Plaintiffs' claim for attorney's fees must also be dismissed as the LPLA does not permit the recovery of attorney's fees. See La. R.S. 9:2800.53 ("Attorneys' fees are not recoverable under this chapter.").

## CONCLUSION

Based on the foregoing reasons, Elekta's Partial Motion to Dismiss (Record Document 7) is **GRANTED**, and all claims of negligence and attorney's fees against Elekta are **DISMISSED WITH PREJUDICE**. Further, the Court **DENIES** Plaintiffs' leave to amend as an amendment would be futile.[2]

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 18th day of October, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

[2] The Fifth Circuit holds that when futility is the basis for denial of leave to amend, the court uses the Rule 12(b)(6) plausibility standard to evaluate the sufficiency of the proposed amended complaint. See Adhiraki v. Kellogg Brown & Root, Inc., 845 F.3d 184, 199–200 (5th Cir. 2017).