UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JACKIE MCCLEARY, ET AL. | CIVIL ACTION NO. 19-00052 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| ELEKTA, INC., ET AL. | MAGISTRATE JUDGE HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion for Leave to Amend, including Request for Partial, Limited Reconsideration or alternatively for Entry of Final Judgment under Rule 54(b). See Record Document 24. Plaintiffs Jackie McCleary, Sanford Bellows, Sharron Bellows, Mark Hays, Glenna Hays, Justin Kraker, and Christy Kraker (collectively "Plaintiffs") request leave to dismiss their claims under the Louisiana Products Liability Act ("LPLA") and all claims against Elekta Oncology Systems, Inc., to add a claim for Plaintiff Mark Hays' new diagnosis of cancer, to add claims against Elekta, Inc. for vicarious liability, and to omit claims for attorneys' fees. See id. For the reasons set forth below, Plaintiffs' Motion for Leave to Amend is hereby **GRANTED.**

**BACKGROUND**

**I.     Factual Background**

This matter arises out of the removal of a cancer treatment LINAC machine from the Overton Brooks VA Medical Center ("Overton Brooks") in Shreveport, Louisiana in 2014. See Record Document 1 at 4. The machine, manufactured by Elekta Oncology Systems Inc., which has now merged with Elekta, Inc., treats cancer patients by "aiming a beam of radiation at a tumor to kill cancer cells." Id. In 2014, Overton Brooks and the Veterans Health Administration ("VHA") entered into a contract with Elekta to purchase a

new machine, and under the contract, Elekta agreed to remove the old machine and install the new one. See id. Elekta then entered into a contract with Advanced Shielding Technologies, Inc. ("Advanced Shielding") to remove the old machine. See id. On the day of the scheduled removal, Advanced Shielding sent only one worker to remove the machine, and due to the lack of manpower, Elekta and Advanced Shielding requested Overton Brooks provide its own employees to aid. See id. at 6-7. Four employees of the VHA—named Plaintiffs Sanford Bellows, Mark Hays, Justin Kraker, and Steven McCleary—were assigned to remove the machine. See id. at 7.

Both Elekta and Advanced Shielding "told Overton Brooks that the old machine contained no radioactivity and that there was no danger to the employees of the Veterans Health Administration." Id. After a two-day removal process, Advanced Shielding and the four VHA employees attempted to dispose of the old machine at a local scrap yard, but the scrap yard refused the machine after it "set off radiation sensors." Id. at 7-8. This led the four VHA employees to ask Elekta and Advanced Shielding if they "had been exposed to dangerous levels of radioactivity," to which they were reassured in the negative. Id. at 8.

In May 2018, Steven McCleary, one of the VHA employees assigned to remove the machine, died from acute myeloblastic leukemia. See id. Plaintiffs allege this type of cancer is "known to be caused by exposure to radiation." Id. Plaintiffs initial complaint also alleges Mark Hays, another VHA employee, "was told that his doctors had found ground glass nodules in his lungs." Id. at 9. The initial complaint further alleges the employees have also suffered bodily injuries and sickness from their exposure, while also naming the employees' wives as Plaintiffs. See id.

## II.     Procedural History

Plaintiffs' initial complaint alleged claims of negligence, negligent misrepresentation, and manufacturer liability under the LPLA for failure to warn of the risks of exposure to radiation. See id. at 12. Plaintiffs also sought recovery of attorney's fees. See id. at 17. Defendants moved to dismiss all claims of negligence, attorney's fees and other common law claims, asserting that the LPLA's exclusivity provision bars recovery outside of the LPLA against a manufacturer for a defective product. See Record Document 7. Plaintiffs argued their general negligence claims could coexist alongside their LPLA claims under a "two-hat" theory of manufacturer liability. See Record Document 11. Plaintiffs also generally asserted that if the Court agreed with Defendants, the proper relief from the Court would be to grant leave to amend, not dismissal with prejudice, but did not include a proposed amendment. See id. The Court granted the Partial Motion to Dismiss, finding the "two-hat" theory distinguishable and ruling the contested claims could not proceed alongside an LPLA claim. See Record Document 19 at 8. The Court also denied Plaintiffs' general request for leave to amend, finding that an amendment would have been futile. See id. at 9.

Plaintiffs now file the instant motion seeking leave to amend their complaint to conform with the Court's ruling. See Record Document 24. Plaintiffs' proposed First Amended Complaint, attached to Plaintiffs' motion, would remove the LPLA claims and proceed instead on the previously dismissed claims of negligence and negligent misrepresentation, while also adding a vicarious liability theory of recovery. See Record Document 24-2. Plaintiffs also seek to remove Elekta Oncology Systems, Inc., the

manufacturer of the old LINAC machine, as a defendant.[1] See Record Document 24-1 at 3. Finally, Plaintiffs wish to clarify the language of claims already pleaded and add a claim for Plaintiff Mark Hays' diagnosis of cancer, which has occurred since the filing of the original complaint. See id. at 6. The Plaintiffs' motion also, alternatively, requests entry of final judgment under Rule 54(b) should the Court deny leave to amend. See id. at 7.

Elekta opposes Plaintiffs' Motion for Leave to Amend, arguing Plaintiffs fail to meet the standard for reconsideration and are attempting to avoid the LPLA's exclusivity provision through artful pleading. See Record Document 26. They further assert that Plaintiffs' amendment remains futile and that Plaintiffs' proposed clarification of existing claims and addition of Mark Hays' cancer diagnosis are unnecessary. See id. Elekta also argues that the requirements for entry of a final judgment under 54(b) are not satisfied by Plaintiffs. See id.

## LAW AND ANALYSIS

### I. Legal Standard

Federal Rule of Civil Procedure 15(a) governs the standard courts employ to determine whether a grant of leave to amend is appropriate. Rule 15(a) provides that leave to amend must be "freely given when justice so requires" and evinces a strong liberal bias in favor of granting leave to amend. Dussouy v. Gulf Coast Inv. Corp., 660

---

[1] Elekta Oncology Systems, Inc. and Elekta, Inc. were collectively referred to as "Elekta" in Plaintiffs' original complaint. See Record Document 1. Plaintiffs contend Elekta Oncology, Inc. was only included as a defendant initially because they were unsure of the relationships between the two Elekta entities and the machine. After discovery revealed Elekta Oncology was the manufacturer of the old machine, Plaintiffs then decided to remove that entity as a party and pursue claims solely against Elekta, Inc. as the service provider. See Record Document 24-1 at 1, n.1. Defendants dispute that Plaintiffs were unaware of this distinction until discovery, arguing such information is publicly available. See Record Document 26.

F.2d 594, 597-98 (5th Cir. 1981); Cargo v. Kansas City S., No. 05-2010, 2009 WL 541318 at *2 (W.D. La. Mar. 4, 2009). This is consistent with the Rule's policy of promoting litigation on the merits rather than on procedural technicalities. See id. So strong is this bias in favor of granting leave that when reviewing under an abuse of discretion standard, courts have stated that the term "discretion" may be misleading. See Stripling v. Jordan Production Co., LLC, 234 F.3d 863, 872 (5th Cir. 2000) ("In the context of motions to amend pleadings, 'discretion' may be misleading, because [Rule 15(a)] evinces a bias in favor of granting leave to amend."). Absent a substantial reason such as (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failures to cure deficiencies, (4) undue prejudice to the opposing party, or (5) futility of amendment, the discretion of the district court is not broad enough to permit denial. See Mayeux v. Louisiana Health Service and Indem. Co., 376 F.3d 420, 425 (5th Cir. 2004) (citing Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

Defendants argue that because Plaintiffs' motion includes a request for reconsideration, the Court should root its analysis in the more stringent standard of Federal Rule of Civil Procedure 59(e). See Record Document 26 at 4. However, Plaintiffs are only seeking reconsideration to the extent necessary to amend their complaint; they are not challenging the ruling the Court issued in defendants' Partial Motion to Dismiss, nor seeking to alter or amend that ruling. See Record Document 24-1 at 2. Further, in the Fifth Circuit a motion for leave to amend is analyzed under Rule 59(e) only when a district court dismisses an action in its entirety and enters a final judgment. See Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003); Whitaker v. City of Houston, 963 F.2d 831, 835 (5th Cir. 1992). When a district court partially dismisses the complaint but does

not terminate the action altogether, the plaintiff may amend under Rule 15(a) with permission of the court.[2] See id. Plaintiffs are requesting to amend their initial Complaint to comply with the Court's ruling on defendants' Partial Motion to Dismiss, and as such, Rule 15(a) serves as the starting point for such an analysis. See Dussouy, 660 F.2d at 597.

**II.  Analysis**

The five "Foman factors" represent the grounds on which a court may deny leave to amend. See Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962). The first four of these "substantial reasons" are clearly not present in the instant matter. Plaintiffs filed this motion less than one month after the Court granted defendants' Partial Motion to Dismiss. This will constitute Plaintiffs' first amendment and seeks to proceed largely with claims originally pleaded against Defendants. Discovery has been stayed while this motion remains pending. See Record Document 44. The new additions proposed by Plaintiffs, nor Plaintiffs' First Amended Complaint as a whole, do not "fundamentally alter the nature of the case," and thus do not unduly prejudice Defendants. Mayeux, 376 F.3d at 427. The fifth and final factor—futility of the amendment—is also not satisfied, but merits further discussion.

**A.  Futility of Amendment**

When futility is the basis for denial of leave to amend, the Rule 12(b)(6) plausibility standard is used to evaluate the sufficiency of the proposed amended complaint. See

---

[2] The Fifth Circuit has also held that analysis of a party's Rule 59(e) motion for leave to amend "should be governed by the same considerations controlling the exerice of discretion under [Fed. R. Civ. P.] 15(a)." See Allen v. Walmart Stores, L.L.C., 907 F.3d 170, 184 (5th Cir. 2018) (citing Dussouy, 660 F.2d at 597, n. 1).

Adhiraki v. Kellogg Brown & Root, Inc., 845 F.3d 184, 199-200 (5th Cir. 2017). In the Court's ruling on defendants' Partial Motion to Dismiss, the Court denied Plaintiffs' general request for leave to amend on futility grounds. See Record Document 19 at 9. Plaintiffs' initial complaint, coupled with its reliance on LPLA manufacturer liability, appeared to indicate that Plaintiffs' alleged harm occurred from the LINAC machine itself. See id. Pleaded as such, an LPLA claim is the exclusive action Plaintiffs can file under, and any amendment would indeed be futile.

However, where the basis for a claim does not relate to the defects of the manufacturer's product itself, but rather stems from the negligent use of the product by one of manufacturer's employees, general negligence claims and related principles are appropriate. See Lavergne v. America's Pizza Co., 2002-889 (La. App. 3 Cir. 2/5/03), 838 So.2d 845, 848. Determining whether Plaintiffs allege Defendants' negligence in the removal process caused their injuries or whether the LINAC machine itself caused their injuries is what has made this case difficult, but Plaintiffs' Motion for Leave to Amend and Plaintiffs' proposed First Amended Complaint resolve the question in favor of the former.

Throughout their Motion for Leave to Amend, Plaintiffs explicitly stress their claims against Defendants arise from the negligent removal of the LINAC machine, not any inherent defects or radioactivity in the machine itself. See Record Document 24-1 at 1. Plaintiffs state the LPLA claim in their first Complaint was "pleaded out of an abundance of caution." See id. at 2, n. 2. Plaintiffs state their negligence claims were intended as their primary claims against Defendants. See id. at 2. Plaintiffs further emphasize their pursuit of negligence claims against Defendants is of "critical importance" to Plaintiffs'

case, thus informing their alternative request for entry of a final judgment to allow for an immediate appeal. See id. at 8.

Plaintiffs' proposed First Amended Complaint also offers important clarity as to which theory of liability forms the basis of their allegations. See Record Document 24-2. Plaintiffs have removed the manufacturer of the LINAC machine (Elekta Oncology, Inc.) as a defendant. See id. at 2. Plaintiffs have also added claims against Defendants under a vicarious liability theory. See id. at ¶ 27-28. Plaintiffs' revised claims against Defendants also evince in favor of negligence recovery, rather than LPLA products liability. See id. at ¶ 25(Q); ¶ 26(Q).

Based on Plaintiffs' materials accompanying the instant Motion, it is now clear that Plaintiffs' claims arise under negligence principles rather than the LPLA. As such, granting leave to amend would not be futile, as a recovery for negligence is no longer prohibited by the LPLA's exclusivity provision. To hold contrary would allow Defendants to use the LPLA as a shield to immunize them from all tort liability. See Lavergne, 838 So.2d at 848.

## CONCLUSION

Given the strong presumption in favor of granting leave to amend, as well as Plaintiffs' clarification regarding the basis for its theories of recovery, Plaintiffs' Motion for Leave to Amend is hereby **GRANTED**. As a result, the Court need not address Plaintiffs' alternative request for entry of a final judgment under Rule 54(b).

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, on this the 22nd day of September, 2020.

_____
S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT