**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

JACKIE MCCLEARY, ET AL.                    CIVIL ACTION NO. 19-00052

VERSUS                                     JUDGE S. MAURICE HICKS, JR.

ELEKTA, INC., ET AL.                       MAGISTRATE JUDGE MCCLUSKY

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss Plaintiffs' First Amended Complaint filed by Defendant Elekta, Inc. ("Elekta"). See Record Document 54. Plaintiffs Jackie McCleary, Sanford Bellows, Sharron Bellows, Mark Hays, Glenna Hays, Justin Kraker, and Christy Kraker (collectively "Plaintiffs") oppose the Motion. See Record Document 59. Elekta has filed a reply. See Record Document 64. For the reasons set forth below, Elekta's Motion to Dismiss is hereby **DENIED**.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The instant lawsuit concerns the alleged unsafe removal of a cancer treatment LINAC machine from the Overton Brooks VA Medical Center ("Overton Brooks") in Shreveport, Louisiana. See Record Document 49 at ¶1. In 2014, Overton Brooks and the Veterans Health Administration entered into a contract with Elekta for the purchase and installation of a new LINAC machine, as well as for the removal of its old one. See id. at ¶10. Elekta subcontracted the removal process to Advanced Shielding Technologies, Inc. ("Advanced Shielding"). See id. at ¶11. The removal was scheduled to take place on the same day the machine was used to treat its last cancer patient. See id. at ¶13. Advanced Shielding sent only one worker to the site, and due to the lack of manpower, Elekta and Advanced Shielding requested Overton Brooks provide its own employees to aid. See id.

at ¶¶16-17. Overton Brooks obliged, with Sanford Bellows, Mark Hays, Justin Kraker, and Steven McCleary assisting over the course of two days. See id. at ¶¶18-19.

Once the machine was dismantled, Advanced Shielding's employee and the four men attempted to dispose of its parts at a local scrap yard but were turned away after setting off radiation sensors. See id. at ¶20. Elekta and Advanced Shielding assuaged the newfound fears of the men by equating any exposure they may have received to "the same as eating a banana." Id. at ¶21. In May 2018, Steven McCleary died shortly after being diagnosed with acute myeloblastic leukemia. See id. at ¶23. The other three men have suffered various bodily injuries and illnesses since this removal event, including a 2019 cancer diagnosis for Mark Hays. See id. at ¶24. Their spouses and Steven McCleary's widow join them as Plaintiffs in this suit. See id. at ¶¶29-38.

Plaintiffs' initial complaint stated causes of action in negligence, negligent misrepresentation, and violations of the Louisiana Products Liability Act ("LPLA"). See Record Document 1. On October 18, 2019, the Court granted Elekta's Partial Motion to Dismiss, holding Plaintiffs' LPLA claims could not coexist alongside their negligence actions, and thus only the LPLA arguments could proceed. See Record Document 19. Soon thereafter, Plaintiffs moved to amend their complaint to reflect their claims were based in negligence and to clarify their LPLA claims were only pleaded alternatively and out of an abundance of caution. See Record Document 24. The Court considered arguments from Plaintiffs and Elekta as to whether the proper foundation for these claims was rooted in negligence or products liability, ultimately finding in favor of the former and permitting Plaintiffs' First Amended Complaint to be filed. See Record Document 47.

## LAW AND ANALYSIS

### I.      Rule 12(b)(6) Standard

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). A complaint attacked by Rule 12(b)(6) does not need detailed factual allegations but requires more than labels and conclusions. See Twombly, 550 U.S. at 555. Importantly, a "formulaic recitation of the elements of a cause of action will not do." Id. When evaluating a pleading, courts must construe the complaint liberally and accept all factual allegations as true. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2009). However, courts need not accept legal conclusions as facts. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).

### II.     Analysis

Elekta seeks to dismiss the entirety of Plaintiffs' First Amended Complaint. See Record Document 54. Elekta's Motion to Dismiss reargues that the claims made in Plaintiffs' First Amended Complaint are barred by the LPLA because the alleged damages result from the properties of the LINAC machine itself. See Record Document 54-1 at 5. Alternatively, Elekta argues its contract with Advanced Shielding for removal of the machine expressly disclaims any liability, responsibility, or control over the removal, and as a result, Elekta owed no duty to Plaintiffs. See id. at 8. Finally, Elekta calls for the dismissal of any allegations based on the theories of vicarious liability or respondeat superior if the underlying claims in negligence are dismissed. See id. at 9. Plaintiffs

emphasize the Court's prior ruling on the issue of LPLA exclusivity with respect to their First Amended Complaint and argue they have pled sufficient facts to avoid dismissal under Elekta's contractual agreement with Advanced Shielding. See Record Document 59.

### A.  LPLA Exclusivity

The LPLA "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. R.S. 9:2800.52; see also Jefferson v. Lead Indus. Ass'n, Inc., 106 F.3d 1245, 1251 (5th Cir. 1997). The LPLA sets forth four exclusive theories of recovery against a manufacturer: (1) a defect in construction or composition, (2) a defect in design, (3) inadequate warnings, or (4) failure to comply with an express warranty. See La. R.S. 9:2800.54(B)(1)-(4). However, where the basis for a claim is unrelated to defects of the product itself, but rather stems from the negligent use of the product by one of the manufacturer's employees, general negligence and its related principles are the appropriate avenue for relief. See Lavergne v. America's Pizza Co., 2002-889 (La. App. 3 Cir. 2/5/03), 838 So.2d 845, 848.

As the Court previously held, Plaintiff's First Amended Complaint makes clear that the claims against Elekta and Advanced Shielding are grounded in negligence rather than products liability. See Record Document 47 at 8; McCleary v. Elekta, Inc., 2020 WL 5665075 at *4 (W.D. La. Sept. 22, 2020). The First Amended Complaint states that LINAC machines become radioactive through normal use over time and contain toxic substances. See Record Document 49 at ¶8. It details the necessary precautions for safe retirement, removal, and disposal of a machine—most notably requiring the machine to be left dormant to "cool off" for a period of time to allow built-up radiation to dissipate—

and alleges that Elekta and Advanced Shielding failed to follow this pivotal safety protocol. Id. at ¶13-14. The First Amended Complaint also outlines the failure of Elekta and Advanced Shielding to adequately staff the project with its own employees and the failure to provide workers with personal protective equipment for the job. See id. at ¶16. While, as stressed by Defendants in their Motion to Dismiss, Plaintiffs' do allege that Elekta and Advanced Shielding failed to warn of the inherent dangers associated with the machine and to meet industry standards for safety, these allegations must be read in conjunction with the alleged acts of negligence and go towards the improper preparation and carrying out of the removal process. See id. at ¶25; Record Document 54-1 at 6. As succinctly stated by Plaintiffs in their opposition memorandum:

> Plaintiffs' claim is not that the radiation emitted by the old LINAC was a defect in the product, but rather that Elekta's employees misused the product during removal by failing to allow the radiation to "cool off" before it was disassembled, and by failing to take other necessary precautions during the removal service.

Record Document 59 at 3. The Court agrees with this summation of Plaintiffs' claims and finds their First Amended Complaint has stated plausible allegations, that if true, would entitle them to relief.

As the Court recognized when granting Plaintiffs leave to amend their initial pleading, this case poses particular difficulties for the products liability/negligence dichotomy because of the inherent dangers associated with LINAC machines. Without the radiation present in the machine through normal use, the Defendants' alleged negligence very well may not have resulted in any harm. However, the presence of radiation in the machine is not indicative of a product defect, but rather signifies the machine has and is working as designed. Consequently, if Plaintiffs were limited to suing

exclusively under the provisions of the LPLA, it stands likely that no relief could be obtained. Louisiana state and federal courts have concluded that allowing a manufacturer to avoid liability in this manner would lead to "absurd consequences." Crawford v. Dehl, 2008 WL 4186863 at *3 (W.D. La. July 21, 2008) (Hayes, Mag. J.) (holding a manufacturer of hydrochloric acid could not use the LPLA's exclusivity provision to avoid liability resulting from employee negligence); see also Colbert v. Sonic Restaurants, Inc., 741 F. Supp.2d 764, 773 (W.D. La. Sept. 21, 2010) (Stagg, J.) ("Colbert contends that a Sonic employee negligently overfilled his coffee cup with hot coffee. This is a viable claim outside of the LPLA."); Triche v. McDonald's Corp., 14-318 (La. App. 5 Cir. 10/29/14), 164 So.3d 253, 258; Lavergne, 838 So.2d at 847. The LPLA may not be used as a shield to immunize manufacturers from all tort liability. See Lavergne, 838 So.2d at 848.

Plaintiffs' First Amended Complaint pleads allegations that demonstrate they are proceeding against Elekta and Advanced Shielding for negligence in the machine removal process rather than for injuries sustained from the characteristics of the machine itself. Accordingly, the LPLA's exclusivity provision does not apply to Plaintiffs' First Amended Complaint and cannot serve as the basis for dismissal.

## B. Elekta and Advanced Shielding Contract

Generally, a principal is not liable for the activities of an independent contractor committed in the course of performing its duties under a contract. See Graham v. Amoco Oil Co., 21 F.3d 643, 645 (5th Cir. 1994) (citing Bartholomew v. CNG Producing Co., 832 F.2d 326, 329 (5th Cir. 1987)). However, two exceptions to this general rule exist. See id. A principal may still be liable for the acts of an independent contractor if (1) the contract pertains to ultrahazardous activities, or (2) the principal exercises operational control over

the acts of the independent contractor or expressly or impliedly authorizes an unsafe practice. See Bartholomew, 832 F.2d at 329. Beyond these noted exceptions, the principal also remains liable for his own acts of negligence. See Voces v. Energy Resource Tech., G.O.M., L.L.C., 704 Fed. Appx. 345, 349 (5th Cir. 2017) (citing Graham, 21 F.3d at 645).

As an initial matter, the parties disagree as to whether the Court may consider the contract between Elekta and Advanced Shielding in deciding this Motion to Dismiss. See Record Document 64 at 9. The relevant agreement was attached to Elekta's Motion to Dismiss as Exhibit A. See Record Document 54-2. The Fifth Circuit permits "documents that a defendant attaches to a motion to dismiss to be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). The contractual agreement in dispute meets both these requirements. Plaintiffs' First Amended Complaint explicitly references the contract between Elekta and Advanced Shielding. See Record Document 49 at ¶11. This subcontract also serves as the basis for Plaintiffs' claims of negligence and the related theories of vicarious liability and respondeat superior. See id. at ¶27. Accordingly, the Court may consider the contract in ruling on the instant Motion.

Although the contract disclaims any liability, responsibility, or control over the project, Plaintiffs have pleaded specific allegations disputing the notion that Elekta played no role in the removal process. See Record Document 49 at ¶27. Plaintiffs allege that Elekta set the timeline for the project at a "kickoff meeting" and failed to account for a cooling off period of dormancy for the machine prior to removal. See id. at ¶¶13-14. Plaintiffs also fault both Elekta and Advanced Shielding for understaffing the project,

failing to provide personal protective equipment, and making repeated misrepresentations to the four Overton Brooks employees about their lack of exposure to radioactivity. See id. at ¶¶17-21.

Accepting these factual allegations as true, which the Court must do at the 12(b)(6) stage of litigation, Plaintiffs have plausibly alleged Elekta retained operational control over the removal project. Through this exception, Elekta may be held liable despite the language of its contract with Advanced Shielding. The Court recognizes that as more evidence becomes available to the parties through discovery, this argument may be the subject of additional motion practice; however, at this early stage of the litigation, dismissal is inappropriate.

### C.  Vicarious Liability and Respondeat Superior

"While 'direct negligence' is an independent negligence cause of action against the employer, 'vicarious liability' is not a cause of action, but rather a method of holding one party liable for the conduct of another, of which *respondeat superior* is merely a species." Dennis v. Collins, 2016 WL 6637973 at *5 (W.D. La. Nov. 9, 2016) (emphasis in original). Elekta correctly states that vicarious liability and respondeat superior are not stand-alone causes of action, but rather theories of negligence. However, having rejected Elekta's LPLA exclusivity and contractual disclaimer arguments for dismissal, these allegations must also survive Rule 12(b)(6).

### CONCLUSION

Plaintiffs' First Amended Complaint contains sufficient allegations to survive Elekta's attempts at dismissal through both the exclusivity provision of the LPLA and the

contractual agreement in place with Advanced Shielding. Consequently, Elekta's Motion to Dismiss (Record Document 54) pursuant to Federal Rule of Civil Procedure 12(b)(6) must be **DENIED**. An order detailing the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana on this 28th day of April, 2021.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT